Morning, Your Honors. Excuse me, Devin McLaughlin for Defendant Appellant Alfred Thomas. As the Court is aware, our position is that it was legal error for the Court below to go to Section 6B, four-level enhancement, and the 5K2.6 upward departure for the West Bissell Street shooting. And the reason for that, Your Honors, is that if you look at 2K2.1 and specifically C, there's a structure within C which is if the underlying offense that the ammo or firearm is used in is serious enough, you're going to use either the greater of the underlying offense or you're going to use the typical Subsection B enhancements. And it's an alternative structure. It's not a cumulative structure under the guidelines. And if you end up doing a departure, if you give them both a B6B and you give them a 5K2.6, you're basically doing an end run around the structure of 2K2.1C, and it's our position that that's impermissible. We've cited the Court to the Seventh Circus decision in Amaguer which had facts that resonate insofar as stepdad points a gun at stepson, pulls it, thankfully doesn't have a bullet go off. And the Seventh Circuit looks at it. The Court below upwardly departed under 5K2.6. The Seventh Circuit looked at it and said, no, that's taken into account under 2K2.1C because that would be ag assault. We'll look at ag assault. And if ag assault, we'll use one or the other, but you don't get to do both. But here, Judge Sanis explicitly and unambiguously identified one guideline question and said that she would impose the same sentence regardless of how that question is resolved. So even if we were to find a procedural error, doesn't that statement suggest that there was this, any error was harmless? And in terms of harmless error, Your Honor, thankfully this Court in Feldman has laid out a pretty good road map in terms of how this Court's going to Feldman conserved multiple guidelines questions and multiple adjustments. Here there was a single guideline question, and she focused on it, she analyzed it, and then without any ambiguity, I think she stated that she would impose the same sentence. I see Feldman as distinguishable. Why am I wrong? Looking at Feldman this morning, the most one observation I'll make about Feldman is in Feldman, because the two Second Circuit cases that seem in play in this are Jass and Feldman, or at least the one, yeah, and in Feldman, the Court went ahead and used four different guideline enhancements, said, listen, even if I'm wrong on some of these, I'm still going to impose the same sentence, and ended up imposing, the guideline calculation in Feldman was 151 to 188 months, and imposed a sentence directly on the poll, you know, directly at 188 months. And this Circuit said, you know, despite what the Court said, and understanding that there were multiple ones as opposed to the single one involved here, you're not going to be able to interpret that as saying that the error didn't affect the sentence. When you end up imposing on . . . But I think the difference is really significant, that there were four factors at play that were fluid and that resulted in a range. Here there was just one question, and your argument is based on the answer to one question about whether there was double counting. So let me answer it two ways. One is, I'll go back to Jass. Jass went ahead and had, under the guideline calculation, either it was going to be 360 months to life or life, and the judge ended up imposing a sentence of 65 years. And so there's no correlation between the error and what the judge went ahead and did. And so when the judge said, listen, I'm going to impose the same sentence anyway, that was upheld in Jass. In Feldman, understanding that there were four guideline errors, those four guideline errors or potential errors added up to a precise sentence of 188 months, the judge imposed a sentence of 188 months, and the Second Circuit reversed, saying, we need unambiguous indication that the sentence would be the same even absent those errors. I went ahead and cited the Court to the Fifth Circuit in terms of, what does it mean for an unambiguous indication? And there's two aspects of that. One is they would have imposed an outside of the correctly calculated guideline sentence. And two, the sentence was in no way influenced by the incorrect guideline calculation. And that's where I think Feldman helps us here, because it's clear that this sentence, the 115-month sentence, was influenced by the departure, because she went ahead and did the departure. She didn't even calculate the guideline without the departure. And so she came up with a 115-month sentence, and she, using her departure analysis, and imposed the 115-month sentence. And respectfully, the notion that that calculation didn't influence the sentence and that this Court can say with 100 percent confidence there was no impact of that error, the government has to prove that level of harmless error. And when you end up having the obviously not mere serendipity of imposing a sentence at exact pull of an incorrectly calculated guideline, whether it's potentially four errors or one error, it's our position that I'm asking the Court to not accept the invitation to open the door for harmless error when you end up having the conclusory sentence at the end saying, I would have done the same thing, which is effectively what she does. But it's hard to say that that's unambiguous because that error fashioned the sentence. It gave her the 115-month piece. Sorry. You argue as sort of your first argument that the structure of the guideline is such, particularly with reference to 2K2.1C, that it effectively eliminates the ability to add the departure under 5K2.6. Was the argument about the structure of the guideline under 2K2.1C raised to the district court? 2K2.1C was never mentioned to the district court. And so the government and Your Honor is asking, well, isn't that plain error? And are we stuck in the plain error? Below counsel argued at every potential stage, you can't impose both B6B and 5K2.6. You can't give either 4 and addition. And he did it at every stage. That's an argument simply of double counting. I get that. But the whole argument with respect to 2K2.1C requires the kind of analysis that you all went through in your briefs as to what the alternative would have been, whether there was an alternative sentencing for attempted murder or things like that. But there's no record with respect to that because you never raised the issue below. And the question is going to be at what level of specificity are you going to require the attorney at the district court level to be making certain arguments? It would be helpful at least to mention it. I respectfully submit, Your Honor, when you're saying you can't impose these two things. And he uses the term double counting. I use the term of art cumulative. At heart, I feel that those are the same things. In terms of I'm saying you can't within the guidelines, it would be improper and cumulative to go ahead and do those. Obviously, counsel below said double counting. I perceive those as synonyms. And I understand that he didn't raise 2K2.1C. But the question, I guess, and I'm repeating myself, is at what level of specificity are you going to go ahead and have to argue more than that? Beyond putting forth a proposition, it's unfair to have these two different pieces. So as opposed to a really broad argument, which is the sentence is improper, which doesn't tend to raise anything, he really got so close to it in terms of saying you can't impose these two. And obviously, at the appellate level, we have the time and energy and motivation to go ahead and try to pull out all the bells and whistles. But I think, and I ask in fairness, that if the person is saying there's something wrong with imposing these two, it feels like double counting, it feels cumulative, that that should be sufficient and not at the pains and penalties of forfeiture result in plain error analysis. Thank you. And if there are no further questions, I'll go. Thank you. Thank you. May I please the court, Rajiv Dosanjh for the government. I'd like to first address the issue of harmless error before getting to the merits. I do think that there's a difference here between enhancements and departures, and I think it's an important one. Departures are exercises in discretion. And here, contrary to defense counsel's position, the PSR clearly laid out the guideline range without the departure. The district court acknowledged that she had read the PSR, so the idea that she didn't know what the range would have been, I think, is not supported by the record. So knowing that range, she exercised her discretion to depart, and she gave an unambiguous indication, as required by this court's precedent, that if the departure turned out not to be right, she would have varied to that same sentence. And three times in her explanation of her sentence, she made clear that 115 months was sufficient but not greater than necessary to serve the purposes of punishment. To now say that to say, well, perhaps you will give a lesser sentence, I think you can't square that with what she said, especially under this exercise of discretion. It does raise a question, doesn't it? Certainly, Your Honor. I mean, where did 115 come from? And I think the standard in this circuit is not that the guidelines have to have absolutely no ‑‑ there has to be some kind of hermetic seal and influence by the guideline. I don't think that's what Feldman stands for. That's the Fifth Circuit. The guidelines are the guidelines. The court is still required, even on resentencing, to consider the guidelines. I think, and some judges, I know, will look at the guidelines to decide what a variant should be. Some judges will pick a number, you know, not using the guidelines. But I don't think you have to say that the guidelines have no influence. And now you've kind of rung that bell. Judges said 115 months is the right sentence here, said it three times. I think it's really just kind of an unrealistic exercise to return this to say, will you give a lower sentence now that we're on technical grounds or saying the departure was not supported. And I think also if the court, you know, in the event, which I think hopefully is unlikely, that the court finds that there's some error here in the departure, another possible way to do this would be a sort of Jacobson remand, a very limited remand to say, well, if you, when you said this, did you really mean that you would give 115 months. But I don't... As you pointed out, you can't really unring the bell. Right. And I think, you know, at the very least, I do think we are under plain error standard here. And so her statements, I think, also undercut the ability of the defendant here to show any harm to substantial rights from the departure as opposed to the variants. And plain error applies, I think, for two reasons. As Judge Kodal pointed out, there was no, actually no mention of the cross-reference provision, no mention of Kuhn. These are different, this is a different type of claim. This is, under Kuhn, the principle recognized there was if a guideline provision already addresses a factor, that factor clearly cannot be used as a ground for departure because it already has been taken into account in consideration of the governing guidelines provision. His Kuhn argument on appeal focuses exclusively on the cross-reference. Double counting is focused on the enhancement under B6B. And that was the issue that was really raised in the district court. And in defendant's opening brief on appeal, he even, you know, acknowledges that the double counting claim is an independent basis to find error. So I think that clearly shows that there are two distinct claims here. And the purpose of Rule 52 is to allow the district court a chance to wrestle with the merits of an argument. And the Kuhn argument here was just never raised. So we are, I think, under plain error. Under any standard of review, I think, though, there was no error here or abuse of discretion in the district court's departure decision. And I think it's, you know, we talk, there's a lot of issues floating around in our brief, but I think it comes down to something very simple. Neither 2K2.1 nor the cross-reference guideline, the aggravated assault guideline, have any, take any account of the number of potential victims here. And that was really what motivated the district court's decision. And that was the factor that was not identified or not taken into account in the guideline upon which Judge Sanis departed. And the commentary to the guidelines, 5K2.0, advised that when the underlying guideline does not take into account the number of victims, a departure may be warranted. And it gives the example of robbery. Because the robbery guideline does not deal with injury to more than one victim, departure may be warranted if several persons were injured. Thankfully, people were not injured here, but there were numerous victims. Then more precisely, 5K2.6 says, when you're considering whether to up or depart, the dangerousness of the weapons, the manner in which it is used, and the extent to which its use endangered others is a relevant consideration to the extent of departure. So it's clear that when you're looking at a factor that has not been taken into account by 2K2.1 or perhaps the cross-reference posed by defendant, the number of victims and the severity of the conduct here is important. And I think it doesn't get much more severe than opening fire on a group of people sitting on a porch before they've had a chance even to get in through the door, using a weapon that is extremely powerful that it pierced the outside of the building, went into an inside wall, almost killing a woman with her child. That is extremely heinous conduct, and I think there was absolutely no abuse of discretion in the court's decision to find that the guideline as it stands did not take that into account. I'd like to quickly address a couple of points that were made in the reply brief, and I think we go back and forth about the application note 14D, and I think what that shows is that the commission itself recognized that a departure could be imposed along with the B6B guideline. Now, counsel suggests that the 2006 amendments are relevant here, and I would agree. But in the 2006 amendments, what the commission did was get rid of the language that had been used before to limit the definition of another felony offense to any firearms offense. So what it did in the 2006 amendments was expand the availability of the enhancement under B6B to other firearms offenses because some courts had interpreted the language as not allowing that. At the same time, it kept in the commentary that eventually it moved to a separate note, 14B, which said that where the defendant used or possessed a firearm or explosive to facilitate another firearms or explosive offense, an upward departure may be warranted. So put that together. At the same time the commission is expanding the reach of the four-level enhancement, it's emphasizing the availability of a departure. Now, this is really just as a way of disproving the notion that you can't apply these two enhancements together and that wherever the enhancement applies, the four-level enhancement, it necessarily will take into account the severity of the underlying offense if its offense level is higher than the cross-reference. And speaking of the cross-reference, counsel is absolutely right that I may have mistakenly suggested in my brief that attempted murder can be proven by a mens rea that did not involve an intent to kill. Nevertheless, I think the district court could have found here, based on all the facts that I laid out, that Mr. Thomas had such an intent. And I think other circuits have found that the appropriate cross-reference here was the attempted murder. And again, I have to follow my sword here. Some of the cases I cite, I've miscited the guideline, but in those cases they were definitely citing the attempted murder and upholding the attempted murder guideline as appropriate cross-reference for this in 2K2.1. And the point here is not necessarily that Mr. Thomas engaged in what could be attempted murder, but the point is that the assault guideline, the aggravated assault guideline, may not necessarily take into account the full severity of the conduct here, that if it lies somewhere in between, that still means that the general principle that is being advanced by the defendant, that the cross-reference necessarily captures all the harm, is just not borne out by the record in this case. And departures are intensely fact-driven, and the Court here carefully considered the facts and found that as the guidelines existed, they did not take into account the heinousness of the crime, including the number of victims and the way they were used in this case. Unless there are any other questions? Mr. McLaughlin? Thank you, Your Honor. Just briefly, on the harmless error, I ask the Court to be very reluctant to open the doors to the one-sentence incantation saying, and by the way, I would have done the same thing. You have to be suspicious of that. And if the judge ends up doing the same thing on remand, c'est la vie, it is what it is. But in terms of how you're going to interpret that when the sentence lands exactly on the pole of the erroneously— But surely the district court wasn't precluded from choosing that as the correct number, but you're asking us to be skeptical about it. In terms of the government's burden of proving harmless error, if it's error, send it back and don't say, well, this is unambiguous when it happens to fall on the exact pole. But the district court did discuss at some length the nature of this crime and also the defendant's extensive history. Correct, which brings up the fact that when I make the representation that the court never calculated the guidelines, what I'm saying is that she used two bases of departure here. She departed based on inadequacy of criminal history and on the 5K2.6. And so she calculated with no departures. She calculated with both departures. She never calculated it without the 5K2.6 and the other one. She didn't do that calculation, so we don't know what it would have been if— At least not on the record. At least not on the record. Thank you, Your Honor. In terms of plain error, Your Honor, this circuit in Sofsky, which I cite in my reply brief, has noted that the notion of plain error can be relaxed in the context of sentencing as opposed to those errors that infect a jury trial, et cetera, where you've got to go back to the beginning and all the costs and burdens that that imposes on the system. Sentencing, it is not a bigoted imposition to go ahead and find errors. That's one of the rationales behind relaxing plain error in the context of sentencing. Our position substantively is not that there can't be a 5K2.6 upward departure in every 2K2.1 possession crime. And this circuit is held in Franklin and Santiago that there can be. Our position is you can't have both the four-level enhancement under B6B and the 5K2.6. That's the thing that's in tension, and no decision of the Second Circuit has gone ahead and allowed that. And that's what the counsel below said is impermissible double counting, and I hope that Your Honor's find that it was the substantively correct argument. Thank you very much. Thank you, Mr. McLaughlin. Thank you both. Safe trips back north.